```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

|  |  |
|---|---|
| RAYMOND BRADLEY,   )<br>                    )<br>          Plaintiff  )<br>                    )<br>     vs.            )<br>                    )<br>ANDREW BALTA, M.D., PHILIP JOHNSON, )<br>WILLIAM STICKMAN, JOAN DELIE, JAMES )<br>BERRY, TIMOTHY COLLINS, THOMAS      )<br>BANDY, KAREN DANNER, R.N., LEE      )<br>JOHNSON, GRANT LATIMORE, M.D.,      )<br>DIANE MANSON, RUSSELL RAY, EDWARD   )<br>SWIERCZEWSKI, M.D. RICHARD WHITE,   )<br>and STEPHANIE WOOD,                 )<br>                    )<br>          Defendants )<br>                    ) | Civil Action No. 02-423<br><br>Judge Terrence F. McVerry/<br>Magistrate Judge Amy Reynolds Hay<br><br><br><br><br><br><br><br>Re: Doc. 147 |

## REPORT AND RECOMMENDATION

I.   RECOMMENDATION

It is respectfully recommended that the motion for summary judgment (doc. 147) filed by Defendants Swierczewski and Wood be granted as to the sole federal claim, i.e., the Eighth Amendment deliberate indifference claim at Count I. It is further recommended that summary judgment be granted sua sponte to the Estate of Dr. Balta also with respect to the same, sole remaining federal claim at Count I. Having disposed of all federal claims in this case, the district court should decline to exercise its supplemental jurisdiction over the state law claims against all remaining Defendants, which claims should be remanded to state court.

II. <u>REPORT</u>

Raymond Bradley ("Plaintiff"), a state prisoner housed by the Department of Corrections ("DOC"), sued fifteen defendants, all of whom, it is alleged, were somehow involved in the treatment of his dental problems or involved in his custody. Plaintiff originally filed suit in the Court of Common Pleas of Allegheny County and on March 1, 2002, the defendants removed the case to federal court. Since that time the case has been the subject of several proceedings, including a previous report and recommendation (Doc. 133) by this Court. Familiarity with those prior proceedings and report is presumed.

The operative complaint is the third amended complaint (Doc. 101) which contains six counts. Count I alleges a federal civil rights cause of action against all of the Defendants, including Edward Swierczewski, M.D., and Stephanie Wood (the "Moving Defendants"), for deliberate indifference to his serious dental needs. Due to previous proceedings, however, the Eighth Amendment claim remains pending only against the Moving Defendants and defendant Estate of Dr. Balta.

Pursuant to this court's supplemental jurisdiction, 28 U.S.C. § 1367, the operative complaint also contains state law claims as follows.

Count II is solely against the Estate of Dr. Balta for the state law tort of assault and battery and is not at issue herein.

Count III is a state law claim of medical malpractice against Defendants Balta, Bandy, Latimore, White Estate of Dr. Balta and is not at issue herein.

Count IV is a state law negligence claim against all Defendants, including the Moving Defendants, alleging that the Defendants had a duty to ensure that Plaintiff was properly cared for and that they breached this duty.

Count V is a state law claim against all Defendants for intentional infliction of emotional distress.

Count VI is a state law claim against all Defendants for negligent infliction of emotional distress.

The complaint essentially complains about the failures of the defendants to properly provide Plaintiff with dental treatment.  As to Dr. Swierczewski, the complaint alleges that he was the "Medical Director at SCI Pittsburgh during the relevant time period, who, inter alia, administered Plaintiff's requests for medical assistance and was responsible, in part, for Plaintiff's treatment, care and well-being."  Doc. 101 at ¶ 12. The complaint alleges that Defendant Stephanie Wood was "the E.M.S.A. Correctional Care Site Administrator at SCI Pittsburgh, during the relevant time period who, inter alia, administered Plaintiff's requests for medical assistance and was responsible, in part, for Plaintiff's treatment, care and well being."  Doc. 101 at ¶ 11.  Plaintiff had complained to various people about

experiencing dental problems.  He was examined by a dentist and x-rayed on May 22, 2000.  The examination revealed cavities and the fact that a few wisdom teeth required extraction.

On July 12, 2000, Plaintiff underwent treatment at SCI-Pittsburgh by Dr. Balta who anesthetized Plaintiff and attempted to extract Tooth Number 17, the lower left wisdom tooth.  Tooth 17 snapped, leaving behind a partially broken wisdom tooth.  Dr. Balta aborted the procedure in order to attempt the procedure again in a facility outside the prison.

The complaint alleges that

> 38.  After the July 12, 2000 surgery, Defendant White submitted a referral form to Defendants Wood and Swierczewski to approve and schedule the completed [outside dental] surgery.  Defendants Wood and Swierczewski due to their position with the Pennsylvania Department of Corrections, were charged with timely approving and scheduling off-site surgery for Plaintiff and other inmates.
> 39.  Defendants Wood and Swierczewski were personally aware of Plaintiff's pain and suffering resulting from his dental problems and had first-hand knowledge of the aborted procedure on July 12, 2000.
> 40.  Despite Plaintiff's best efforts, Defendants Wood and Swierczewski did not schedule the completion of the aborted surgery until late September 2000, over two months later.
> 41.  Plaintiff's pain and suffering as a result of the impacted teeth ## 1 & 16, the broken wisdom tooth, (tooth # 17), and the cavities . . . increased during Defendants Wood and Swierczewski's scheduling delay.
> 42.  By doing nothing more than fulfilling their job duties and promptly scheduling Plaintiff's surgery, Defendants Wood and Swierczewski could have prevented Plaintiff's pain and suffering.
>
>     . . . .

4

>       63.  In addition, Defendants Phillip L. Johnson,
> . . . along with Defendants . . . Swierczewski, and
> Wood, despite being charged with redressing grievances
> and ensuring that prison staff complied with all prison
> rules, regulations, and policies, failed to alleviate
> or redress the abuse, neglect, and negligent medical
> care . . . provided to Plaintiff.

Doc. 101 at ¶¶ 39-41, 63.

Plaintiff asserts that the Moving Defendants violated his Eighth Amendment right to be free of cruel and unusual punishment because they were deliberately indifferent to his dental problems by delaying the scheduling of his dental surgery. Doc. 101 at ¶¶ 76-85. Plaintiff also contends that the Moving Defendants were negligent in that they breached their duty to "ensure that Plaintiff was properly cared for while incarcerated at SCI Pittsburgh." Doc. 101 at ¶ 100. Plaintiff further asserts that the Moving Defendants also committed the state law torts of both intentional and negligent infliction of emotional distress. Doc. 101 at ¶¶ 105-114.

The Moving Defendants have now filed a motion to dismiss the action or, in the alternative, for summary judgment. This Court determined to treat the motion as one for summary judgment and so advised the parties and their counsel. The matter has been fully briefed and is ripe for decision.

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); <u>Celotex Corp. v. Catrett</u>,

477 U.S. 317, 322-23 (1986).  The moving party "has the burden of showing there is no genuine issue of material fact, and once the moving party has sustained its burden, the opposing party must introduce specific evidence showing that there is a genuine issue for trial."  Williams v. Borough of West Chester, 891 F.2d 458, 464 (3d Cir. 1989)(citing Celotex Corp., supra at 322-24).  Determining whether a material fact is "genuine" requires "an inquiry into 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).  "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., supra at 248.

   The first defense raised by the Moving Defendants is that the Plaintiff failed to comply with the administrative exhaustion requirement of the Prison Litigation Reform Act ("PLRA").  42 U.S.C. § 1997e(a).  In the PLRA, Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting civil rights actions brought by prisoners.  The PLRA amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997e, that

6

required prisoners to exhaust administrative remedies available to them prior to a prisoner bringing federal legal claims concerning prison conditions. See 42 U.S.C. § 1997e(c)(2). See also Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000), aff'd, 532 U.S. 731 (2001). Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has declared that "the PLRA's exhaustion requirement applies to all inmate federal legal claims about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Furthermore, not only is the exhaustion requirement broad, it is also mandatory. The Court of Appeals for the Third Circuit has made clear that Section 1997e(a) "'specifically mandates' that inmate-plaintiffs exhaust their available administrative remedies." Nyhuis v. Reno, 204 F.3d at 73 (internal citations omitted). Therefore, "it is beyond the power of this court ... to excuse compliance with the exhaustion requirement...." Id. Accordingly, the Third Circuit has concluded "[o]ur bright line

rule is that inmate-plaintiffs must exhaust all available administrative remedies." Nyhuis, 204 F.3d at 75. Because Plaintiff's allegations in the complaint constitute an "action brought with respect to prison conditions" within the meaning of the PLRA, the exhaustion requirement provisions of Section 1997e(a) apply herein.

While it is true that exhaustion of administrative remedies constitutes an affirmative defense, Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002), the Moving Defendants have raised this affirmative defense in their motion for summary judgment and have supported this defense with appropriate evidentiary material, including an affidavit from Carol Scire, the Superintendent's Assistant at SCI-Pittsburgh during the time of the events recounted in the third amended complaint. Ms. Scire attested that Plaintiff did not exhaust his administrative remedies because he did not utilize all three levels of the grievance procedure.[1]

The following facts are taken for the most part from the Scire affidavit. Plaintiff filed a grievance on October 3, 2000,

---

[1] It is undisputed that the available grievance procedure for Plaintiff's complaints was that contained in the DOC policy enumerated DC-ADM 804 ¶VI. Doc. 156 at 6 n.4. (in all of its cites to documents found on the docket after Doc. No. 140, the court utilizes the page numbers assigned by the computer found in the upper right hand of the documents). See also Doc. 147, Ex. H at 2. Those three levels involve (1) initial review by a facility grievance officer, (2) an appeal to the Superintendent of the prison and (3) a final appeal to the DOC Secretary's Office of Grievances and Appeals. Doc. 156 at 6 n.4.

concerning his dental complaints. That grievance was assigned number PIT-0638-00. In that grievance, Plaintiff stated that he had been in pain since July 2000 because a portion of a tooth that was extracted was permitted to remain in his mouth. A grievance review officer replied to Plaintiff's grievance on October 12, 2000, noting that the remainder of the tooth along with other teeth were extracted on October 5, 2000 and that a Dentist, Dr. White, was following Mr. Bradley's case.[2]

On October 16, 2000, Plaintiff appealed to the Superintendent. The Superintendent remanded the grievance to first level because the Superintendent was "inclined to believe that your problems were not properly addressed. I am returning the grievance to the grievance officer for reinvestigation of pain you are allegedly still incurring." Doc. 120, Ex. 4, PLNTF 39-40.[3]

On October 24, 2000, a grievance officer and Dr. White submitted another first level response to Plaintiff's grievance. In that response, Dr. White set forth a detailed summary of Plaintiff's dental treatment. Dr. White noted that Plaintiff

---

[2] See Doc. 108, Ex. G at unnumbered p. 10. The date of October 5, 2000 was erroneous, Plaintiff's teeth were removed on September 28, 2000. Id. at un. p. 9.

[3] Although in Ms. Scire's affidavit she referred to Dr. White's response, the copy of the response appended to the affidavit contained only the first page of the response. Doc. 147, Ex. H at 13. Hence, the court refers the reader to Dr. White's complete response contained in Doc. 120, Ex. 4, PLNTF 39-40.

underwent a dental procedure on July 12, to have his wisdom tooth extracted but that the procedure was aborted. Although not noted in the response, the reason for aborting the procedure was due, at least, in part, to the fact that profound sedation was not able to be obtained. Doc. 120, Ex. 1, DEF 279 (entry in Plaintiff's medical record dated 7/12/00, indicating that profound anesthesia was not accomplished and Plaintiff was referred for off site intra-venous sedation procedure). Dr. White's response further noted that Plaintiff requested and received medication for pain on July 17, 2000. Doc. 120, Ex. 4, PLNTF 39-40. See also Doc. 117, Attachment A at unnumbered p. 8 (Plaintiff's medical record indicating that Plaintiff was prescribed Tylenol # 3).[4] Dr. White also noted that Plaintiff was seen in the Dental Department on July 18, August 1, August 17, and 21, and on September 7. On September 28, Plaintiff underwent the off-site dental surgery. Dr. White's response further explained that after returning to the prison on September 28, 2000, Plaintiff was seen by the Dental Department and given analgesics and nutri-paks (apparently a dietary supplement given to Plaintiff due to post operative difficulty in eating). Then on October 2, 2000, a request from Plaintiff was received by Dental Department for medications and this request was answered

---

[4] Tylenol # 3 is a mixture of both Tylenol and Codeine, a narcotic pain reliever. See

http://www.medicinenet.com/codeine/article.htm

10

that very date.  On October 3, 2000 Plaintiff was seen in the Dental Department on a post operative visit and he was on medications for swelling and pain.  Doc. 120, Ex. 4, PLNTF 40. Dr. White's response also indicated that Plaintiff was seen on October 11 for a post operative visit and that healing was satisfactory and Plaintiff was asymptomatic for dental pain.

    Rather than appealing Dr. White's grievance response to Superintendent Johnson, Plaintiff, after receiving White's response, sent a letter to the Department of Corrections Central Office Medical Review Committee, which forwarded Plaintiff's letter to the DOC Secretary's office of Inmate Grievance and Appeals.  Doc. 147, Ex. H at 4.  On December 12, 2000, Kristen P. Reisinger, Assistant Chief Grievance Coordinator of the Secretary's Office of Inmate Grievance and Appeals, responded to Plaintiff's letter and informed him that Superintendent Johnson had remanded his initial grievance and if Plaintiff was unsatisfied with Dr. White's response on remand, Plaintiff was required to "resubmit an appeal to Superintendent Johnson prior to appealing to final review."  Doc. 147, Ex. H at 11.

    The Reisinger letter was appended to Ms. Scire's affidavit.  Ms. Scire attested that Plaintiff never complied with Ms. Reisinger's instructions to appeal to Superintendent Johnson and consequently Plaintiff failed to exhaust his available administrative remedies.  Plaintiff filed a motion to strike the

Scire affidavit based on a contention that the Reisinger letter was improperly relied upon in this summary judgment motion.[5] That motion to strike was denied by Order of Court dated February 15, 2006 (doc. 171).

Having failed to have this unfavorable evidence struck, the only remaining argument Plaintiff raises is that the letter he sent to the Department of Corrections Central Office Medical Review Committee satisfied his requirement to utilize all three levels of the grievance procedure. Doc. 156 at 6 n.4. Essentially, Plaintiff argues that he filed his grievance initially (step 1), he then appealed to Superintendent Johnson (step 2), and even though after Johnson had granted the appeal and remanded the grievance to better address the issue of Plaintiff's pain, after the response by Dr. White Plaintiff filed his final appeal to the Department of Corrections Central Office Medical Review Committee (step 3). Id.

Plaintiff's argument that he properly exhausted is unavailing, particularly in light of the uncontroverted fact that Kristen Reisinger specifically instructed Plaintiff as to what the DOC grievance procedure required him to do in order to properly exhaust his administrative remedies, i.e., to file an

---

[5] In summary, Plaintiff charged that the Reisinger letter relied upon by Ms. Scire in her Affidavit constituted hearsay which could not properly be relied upon by the Court under Fed.R.Civ.P. 56(e) and that the Reisinger letter had not previously been produced in response to discovery requests and that its inclusion at this late date would be prejudicial.

appeal to Superintendent Johnson if he was unsatisfied with Dr. White's response following the remand/investigation.  It is undisputed that following the remand/investigation Plaintiff did not appeal to Superintendent Johnson, or, at least, there is no evidence that he did so and all of the evidence is to the contrary.  Scire Affidavit, Doc. 147, Ex. H at 5 (attesting that Bradley did not file an appeal with Superintendent Johnson after the remand).  It is not for Plaintiff to say what the DOC grievance procedures required.  It is not even for this Court, in the first instance, to say what the DOC grievance system required, rather, whether Plaintiff exhausted his administrative remedies is to be answered in the first instance by reference to the DOC requirements as interpreted by the DOC authorities.  See Spruill v. Gillis,  372 F.3d 218, 232 (3d Cir. 2004). The Court in Spruill declared

> there simply is no express federal law describing the
> procedural requirements with which prisoners must
> comply in satisfying § 1997e(a)'s exhaustion
> requirement.  As between crafting judge-made law on
> this subject and looking to state prison grievance
> procedures, the latter will far better serve the policy
> interests of the PLRA. We have repeatedly noted above
> that the legislative history is clear that the PLRA was
> intended to return control of prisons to wardens;  one
> aspect of this was a comprehensive program of returning
> control of the grievance process. Mandatory exhaustion
> (with a procedural default component) ensures that
> inmate grievances will be addressed first within the
> prison's own system-in this respect, the PLRA is thus
> appropriately defederalizing.  Moreover, Congress
> repealed the portions of CRIPA that established federal
> standards-setting and certification for prison
> grievance systems.  It would be anomalous, to say the

>    least, to refuse to give effect to the very rules that
>    the PLRA encourages state prison authorities to enact.

Spruill, 372 F.3d at 231 (citation omitted).

Because the DOC grievance procedures, as explained by the Reisinger letter, required Plaintiff to submit an appeal to Superintendent Johnson after Dr. White's post-remand response, and because there is no evidence of record to show that Plaintiff did file such an appeal, Defendants have met their burden to show that there is no genuine issue of material fact with respect to whether Plaintiff exhausted his administrative remedies. In light of the foregoing, the court rejects Plaintiff's argument that the Reisinger letter fails to demonstrate that Plaintiff did not exhaust his administrative remedies. Doc. 156 at 8 n.6. Hence, summary judgment should be granted to the Moving Defendants as to Plaintiff's Section 1983 claim in Count I.

While it is true that the Estate of Dr. Balta did not move for summary judgment based upon failure to exhaust, a sua sponte grant of summary judgment in the Estate's favor is nevertheless appropriate based, as shown above, upon Plaintiff's failure to exhaust. See, e.g., Canell v. Bradshaw, 97 F.3d 1458, at **5 (Table, Text available in Westlaw) (9th Cir. 1996) (unpublished) ("A district court may grant summary judgment to a non-moving party sua sponte so long as the other party has had an adequate opportunity to address the relevant issues."). See also Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986)("Our conclusion is

14

bolstered by the fact that district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence."). Instantly, Plaintiff had notice and opportunity to be heard with respect to the exhaustion issue in relation to the Moving Defendants' motion for summary judgment. To the extent that there are any issues unique to the Estate of Dr. Balta concerning exhaustion, although there does not appear to be any, the report and recommendation and objections procedure can serve as the necessary notice and opportunity to address any such relevant issues. Magouirk v. Phillips, 144 F.3d 348, 359 (5th Cir. 1998) (Finding the Magistrate Judge's Memorandum and Recommendation placed plaintiff on notice that procedural default was a potentially dispositive issue with respect to three of his claims and afforded him an opportunity to oppose application of the procedural default doctrine in the district court.); Canady v. Baker, 142 F.3d 432 (Table), 1998 WL 123996, *1 (6th Cir. 1998)(same).

Although the Moving Defendants also moved alternatively for summary judgment on the state law claims, in light of the recommended grant of summary judgment on the federal claim upon which the federal Court's jurisdiction was predicated, there does not affirmatively appear on the record any reason for the Court to exercise supplemental jurisdiction over these state law tort

claims.  See, e.g., Boneburger v. Plymouth Township, 132 F.3d 20, 23 n.1 (3d Cir. 1997)("where federal claims are dismissed before trial, the district court 'must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'")(quoting Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)).  Pursuant to Section 1367(c)(3) of Title 28, United States Code, a district court may decline to exercise supplemental jurisdiction over pendent state law claims where "the district court has dismissed all claims over which it had original jurisdiction."  28 U.S.C. § 1367(c)(3).  See also, Tully v. Mott Supermarkets, Inc., 540 F.2d 187, 196 (3d Cir. 1976)("If it appears that the federal claim is subject to dismissal under F.R.Civ.P. 12(b)(6) or could be disposed of on a motion for summary judgment under F.R.Civ.P. 56, then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances.")  Should the district court adopt this Report and Recommendation, a remand to the state court would be an appropriate alternative to dismissal without prejudice.  Borough of West Mifflin, 45 F.3d at 788.

    In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written

objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

                                            Respectfully submitted,

                                            /s/ Amy Reynolds Hay
                                            AMY REYNOLDS HAY
                                            United States Magistrate Judge

Dated: 22 February, 2006

cc:   The Honorable Terrence F. McVerry
      United States District Judge

      Jerry S. McDevitt
      Brian S. Rudick
      Anthony F. Spalvieri
      Thomas C. Ryan
      Kirkpatrick & Lockhart
      Nicholson Graham
      535 Smithfield Street
      Henry W. Oliver Building
      Pittsburgh, PA 15222-2312

      Donald G. Lucidi
      Murphy Taylor
      326 Third Avenue
      Pittsburgh, PA 15222

      Kemal Alexander Mericli
      Office of the Attorney General
      Civil Litigation Section
      564 Forbes Avenue
      6th Floor, Manor Complex
      Pittsburgh, PA 15219